887 F.2d 1281
 Dalton ROBERTS, County Executive of Hamilton County; Floyd
Fuller, Superintendent of the Hamilton County
Workhouse; H.Q. Evatt, Sheriff of
Hamilton County, Tn,
Plaintiffs-Appellees,
v.
TENNESSEE DEPARTMENT OF CORRECTION, and its Commissioner;
W. Jeff Reynolds, individually and in his capacity
as Commissioner; Charles Burson, State
Attorney General, Defendants-Appellants.
 No. 89-5307.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 20, 1989.
Decided Oct. 5, 1989.
 
 Michael J. Mahn, O. Michael Carter, Asst. County Atty., Chattanooga, Tenn., for plaintiffs-appellees.
 David M. Himmelreich, Asst. Atty. Gen., Charles W. Burson, Atty. Gen., Office of the Attorney General of Tennessee, Nashville, Tenn., for defendants-appellants.
 Before MERRITT, Chief Judge, NELSON, Circuit Judge, and LIVELY, Senior Circuit Judge.
 
 ORDER
 INTRODUCTION
 
 1
 Following oral argument in this case, the Court entered an order inviting the parties in this case and in Wayne Carver v. Knox County v. Ned McWherter, CA Nos. 89-5341/5369, to enter into settlement negotiations through this Court's conference attorneys, pursuant to Sixth Circuit Rule 18, for the purpose of devising a statewide system of relief from local jail overcrowding that could be coordinated with the state prison population orders currently supervised by Judge Higgins of the Middle District of Tennessee in the case of Grubbs v. Norris. Having gone through the mediation process, the parties in this appeal have reached an agreement on the terms that would be satisfactory to them and request the Court to enter this as the Court's order. We conclude that the stipulations between the parties as reflected herein should be entered as an order and recommend that the remedial process established by this order should be used in similar local jail cases in federal courts in Tennessee requiring removal of TDOC-sentenced inmates.
 
 1. Immediate Reduction of Inmate Population
 
 2
 The State has already begun and will continue to remove a certain number of TDOC-sentenced inmates from the Hamilton and Knox County jails according to a written commitment. This Court retains limited jurisdiction of this case for ninety (90) days following entry of this order for the enforcement of the terms of that commitment. The State shall provide the Senior Conference Attorney with regular reports of the number of prisoners being removed from these two jails and any other information that he may reasonably require to monitor compliance with the terms of this agreement.
 
 2. Implementation Coordinating Committee
 
 3
 The parties to this litigation shall each designate representatives to an Implementation Coordinating Committee (ICC), which will serve as a forum in which all matters pertaining to this coordinated relief process can be discussed. The Committee will include representatives of inmates of the local jails should one or more cases in which such inmates are parties be transferred in accordance with section 5 of this Order and may include others it determines are necessary to accomplish the purpose of this Order. The Committee will seek to facilitate cooperation and to resolve technical and procedural problems without unnecessary resort to the courts. The Senior Conference Attorney or designated successor shall serve as moderator for the ICC. The Court contemplates that additional parties may join the committee as other correctional facilities may become subject to similar orders.
 
 3. Inmates to be Removed
 
 4
 TDOC-sentenced inmates are defined by the District Court as inmates who have been sentenced to the Tennessee Department of Correction and whose sentencing papers and pre-sentence investigation reports are in the hands of the Department. Such inmates do not include persons in custody on parole violation warrants or on new charges or in custody for purposes of post-conviction relief hearings to be held in the county concerned. These non-TDOC sentenced inmates represent a significant portion of the jail population and must be considered in setting population limits under this order.
 
 4. Removal Policy
 
 5
 Priority for removal of individual TDOC-sentenced inmates from county jails to a state correctional facility shall, to the extent practicable, be based upon the inmates' length of stay in local jail facilities after sentencing, consistent with inmate health, safety and security considerations as determined by local officials.
 
 
 6
 5. Transfer to Middle District of Tennessee for Remedial
 
 Orders
 
 7
 This case is remanded to the United States District Court for the Eastern District of Tennessee with instructions to decide the remaining attorneys' fees issues and to transfer the remaining remedial portions of the case that pertain to limitations on inmate populations to the United States District Court for the Middle District of Tennessee. There, this case should be assigned to the judge presiding over the Grubbs case for further proceedings consistent with this Order.
 
 
 8
 It is the view of this Court that the remedial portions of future jail overcrowding cases in Tennessee requiring removal of TDOC-sentenced inmates should be under the jurisdiction of the Judge in the Middle District of Tennessee who is handling the Grubbs case. That judge shall resolve competing constitutional claims of prison and jail inmates regarding population issues. This Order should not be interpreted as a final decision in future cases or as preventing any party from showing to the Middle District and any reviewing Court why the remedial procedure of this Order is not appropriate under the particular circumstances of another case.
 
 
 9
 Under the system contemplated by the parties and the Court, the United States District Court for the Middle District of Tennessee shall have jurisdiction of all matters pertaining to the setting, modification and enforcement of population limits in local jails, and the district court in which the initial conditions determination was made shall determine all other remedial matters.
 
 
 10
 6. Appointment of Consultant for Local Corrections
 
 
 11
 As soon as possible, but not more than thirty (30) days after the entry of this Order, the parties shall submit to the district judge to whom the Grubbs case is assigned names of people they all agree would be qualified to serve as the Consultant for Local Corrections (CLC). That Judge will make an appointment pursuant to Rule 53(a), Federal Rules of Civil Procedure. The CLC shall not be the same person as the Grubbs special master, but shall have equal standing before the Court. Although the Court recognizes that their respective charges are directed at competing constitutional claims, it is the expectation of this Court that the CLC and the special master will work together in a cooperative manner and not as adversaries representing antagonistic parties. The CLC will serve the Grubbs judge in these and other cases concerning the inter-relationship between crowding in the state prison system and in the local jails. The CLC should coordinate the jail population limits with the ongoing relief in Grubbs. Accordingly, the CLC and the ICC are expected to consult with the plaintiffs' representative in the Grubbs case in formulating any recommendations that would affect the orders in the Grubbs case.*
 
 
 12
 The CLC will be appointed by the Grubbs judge as soon as possible. His or her term of office shall be co-extensive with the terms of this Order (see p 13) unless terminated earlier by the District Court upon motion and for good cause shown. The office of the CLC may be modified or abolished by the District Court after a hearing or upon agreement of the parties.
 
 
 13
 The Court directs that the compensation of the CLC and all reasonable and necessary expenses in this case and future cases which may be transferred shall be paid by the State of Tennessee. Any disputes over compensation of the CLC shall be resolved by the United States District Court for the Middle District of Tennessee, which has reviewed and approved this Order.
 
 7. Facility and TDOC Population Limits
 
 14
 The CLC shall study the population problems in each affected county and shall recommend total facility population limits for each jail and also a limit on the number of TDOC-sentenced inmates to be housed in each affected county. In setting these limits, the CLC shall consider the parole violators mentioned above. If these limits are lower than current population numbers, the consultant shall make recommendations for achieving the limits. This Order contemplates that the CLC and the ICC will not recommend the immediate release of inmates at a state or local level unless all other measures have been considered.
 
 
 15
 The CLC shall consult with the parties regarding the proposed limits before recommending them to the United States District Court for the Middle District of Tennessee. The limits recommended by the CLC, and those set by the court, shall provide for temporary fluctuations.
 
 
 16
 The recommendations in this case shall be made no later than December 1, 1989. In any other case which may be transferred to the Middle District of Tennessee after November 1, 1989, the recommended limits shall be filed within thirty (30) days of the transfer order. Any affected party, and the Grubbs plaintiffs to the extent their interests are adversely affected, may object to the recommended limits by filing objections with the United States District Court for the Middle District of Tennessee within ten (10) days after the recommendations are received. Any appeals by parties from orders of the district court setting, modifying, or enforcing population limits taken pursuant to 28 U.S.C. Sec. 1292 shall be expedited for consideration by this Court.
 
 
 17
 The CLC shall function as an investigative and hearing officer to monitor compliance with such court orders as come within his authority. The order of reference to the CLC to monitor compliance shall give the power to investigate by conducting interviews, visiting all relevant premises, obtaining documents, and convening hearings in local jurisdictions.
 
 
 18
 8. Criteria for Setting Facility Population Limits
 
 
 19
 The CLC, in recommending facility population limits, should consider the capacity certified by the Tennessee Corrections Institute on January 1, 1989, or, in the case of a non-certified jail, the capacity which would result from application of the standards of the Institute in effect as of January 1, 1989. In this process, the CLC and the district court shall consider the needs of the jail, including safety and security, the needs of the inmates, the constitutional rights of the inmates, the needs of other jails in the process, the requirements of the Grubbs process, and the availability of any short-term space for housing inmates on a temporary basis.
 
 
 20
 If the CLC recommends, or the court sets, a limit other than that which is indicated by the 1989 standards of the Institute, reasons shall be given referring to the factors set forth above. Should a party object to a recommended limit the burden is on such objecting party by a preponderance of the evidence to make a showing why such recommended limit should be changed in light of the same factors set forth above.
 
 
 21
 9. Criteria for Setting County-wide Limits on TDOC-sentenced
 
 Inmates
 
 22
 The Court recognizes that due to the emergency circumstances illustrated by the record in this case, the county jails in Tennessee will play a temporary role in housing TDOC-sentenced inmates until the level contemplated by present state law, Tenn.Code Ann. Sec. 41-8-106, is achieved. The CLC will consider this fact as well as the need to make progress toward the goal set forth in Tenn.Code Ann. Sec. 41-8-106. The CLC will also consider the effect of recommended limits on all the local facilities which house TDOC-sentenced inmates and on the state facilities subsumed under Grubbs, the availability of short-term space for housing inmates on a temporary basis, the length of time the bulk of TDOC-sentenced inmates have been held post-sentencing in the different jails, the extent of local efforts to deal with the population issue (actual and planned additional capacity, community corrections, and pre-trial release and bond review programs), the extent of state efforts to relieve the backup of TDOC-sentenced inmates (actual and planned capacity, community corrections, parole), and the extent and duration of the crowding in the facilities concerned. Any party objecting to the recommendation must show by a preponderance of the evidence that the recommended limit materially departs from the criteria set forth in this paragraph. Nothing in this order shall be construed to discourage or prohibit counties from voluntarily contracting with the state to house such inmates pursuant to subsection (b) of Tenn.Code Ann. Sec. 41-8-106.10. Modification of Limits
 
 
 23
 The CLC shall be empowered sua sponte, after consultation with the parties and the ICC, to recommend modification of the limits in light of changed conditions. Motions for modification or enforcement of population limits shall be heard first by the CLC and then by the district judge handling the Grubbs case.
 
 
 24
 11. Advisory Recommendations on How to Meet the Limits
 
 
 25
 In addition to recommending limits for the total populations and the TDOC-sentenced populations in local jails, the CLC shall make non-binding recommendations on how to meet the limits.
 
 
 26
 These non-binding recommendations shall be made to the parties and be made available to the district judge upon request. The population limits as recommended and ordered shall also be filed, for informational purposes, with the district court in which the determination of unconstitutional conditions was made.
 
 12. Enforcement
 
 27
 No motion for enforcement of limits shall be filed before January 1, 1990. After January 1, 1990, such a motion may be filed after a party is out of compliance for seven (7) consecutive days. Any party's motion for further relief, or to enforce this Order on population limits, shall be accompanied by a showing that the CLC's advisory findings have not been implemented and are feasible, or have been implemented and are insufficient. Motions for enforcement of the limits shall be heard by the district judge in Grubbs. Of course, the district court shall retain full authority to enforce its orders; however, we encourage use of the ICC and the CLC to resolve these and other problems that arise under this Order.
 
 13. Termination of Proceedings
 
 28
 The terms of this Order and the jail population limits to be set hereunder shall terminate in three (3) years from the date of entry of this order or when the orders limiting the state prison population in Grubbs have been removed, whichever occurs first, provided that the District Court for the Middle District of Tennessee and the originating court are satisfied that the unconstitutional conditions which were linked to overcrowding have been corrected. In considering a motion to remove limits before the orders limiting state prison population in Grubbs have been removed, the district courts shall determine that the local conditions are likely to remain corrected until such time as the Grubbs limits are terminated. The ICC may be abolished earlier by the District Court upon agreement of the parties or upon good cause shown. The United States District Court for the Middle District of Tennessee shall retain jurisdiction within the limits of this Order until such findings have been made.
 
 14. Conclusion
 
 29
 The order of the District Court is final as to the existence of unconstitutional conditions in the Hamilton County jail facilities, the appellants having dismissed their appeal of this issue. The orders of the District Court denying the state appellants' motion to transfer venue of the relief issues and requiring the removal of TDOC-sentenced inmates from these jails are reversed and the case is remanded with directions to transfer the population limit issue to the United States District Court for the Middle District of Tennessee. Hamilton County was the prevailing party in the district court below for the purpose of attorneys' fees under 42 U.S.C. Sec. 1988, and nothing in this order shall change that status. The defendant, Commissioner of the Tennessee Department of Correction, is instructed to provide a copy of this order to the parties and the Court in all future litigation in which the presence of TDOC inmates is alleged to be causing unconstitutional conditions.
 
 
 
 *
 Similarly, we anticipate the parties in Grubbs will consult with the CLC and the ICC regarding any changes they plan that would affect the TDOC populations in County jails